GURNEY P. HOOD, as Commissioner of Banks of the State of North Carolina, Plaintiff, *v.* GUARANTY TRUST COMPANY OF NEW YORK and Others, Trustees of the Estate of THEODORE ROOSEVELT, Deceased, Defendants.

Supreme Court, New York County, August 13, 1934.

*Cravath, DeGersdorff, Swaine & Wood* [*Bruce Bromley* of counsel], for the plaintiff.

*Kobbe, Thatcher, Frederick & Hoar* [*Karl T. Frederick* of counsel], for the defendants.

SCHMUCK, J. Based principally on stipulations which are fortified by the oral testimony of the liquidating agent for the Commissioner of Banks of North Carolina and admissions in the pleadings, plaintiff's claim seeks to charge these defendants with a liability of $10,000 as trustees for one who was a stockholder in a defunct banking corporation. A recital of the relatively undisputed facts will aid in the application of the legal principles involved, as well as tend to a better understanding of the decision herein. The defendants, as trustees of the estate of Theodore Roosevelt, are the owners of 100 shares of stock of Page Trust Company of North Carolina. These shares came to them in January, 1931, by transfer from Roosevelt and son, who had acquired them in 1927. In 1933 the trust company, no longer able to withstand the economic depression which overwhelmed banking affairs throughout the nation, acknowledged its inability to continue by appealing to the Commissioner of Banks to take charge. After struggling from March 3, 1933, when its operations were restricted by edict of the Commissioner, to May 20, 1933, in a sincere endeavor to reorganize, the trust company was compelled to close its doors. The plaintiff, in fulfillment of his duties, immediately took possession and two days later filed the notice of possession required by law. In furtherance of liquidation proceedings, the plaintiff decreed an assessment against the stockholders and filed notice of such levy with the clerk of the Superior Court of Moore county, all in compliance with section 218(c) of the Consolidated Statutes Supplement 1924 of North Carolina (as amd. by Pub. Laws 1927, chap. 113, and Pub. Laws 1931, chap. 243). To this notice the trust company filed no answer so far as the evidence is concerned. It is conceded by stipulation that throughout this period these defendants were residents of New York, had not been served with any process, and were not during these times within the territorial limits of North Carolina. Because of these circumstances, plaintiff, invoking section 218(c), as amended, and sections 219(a) and 219(c) of the Consolidated Statutes Supplement 1924 of North Carolina, claims the right to a verdict against the defendants as prayed for in the complaint, for the reason that the assessment levied by him in his official capacity

has the full force and effect of a judgment of a court of record, and, as such, is entitled to full faith and credit throughout the Union as constitutionally provided.

Should this contention be negatived, plaintiff finds recourse in the argument that facts stipulated, not denied and proved unanswerably, establish its character as an assessment valid under North Carolina law, entitling it to recognition and enforcement everywhere in the United States. In addition to an unqualified denial of a cause of action, the defendants repel plaintiff's claim by five distinct defenses:

*First,* defendants protest the alleged judgment as illegal and void because of the lack of jurisdiction, since none of the defendants is a resident of North Carolina or was within its confines so as to be subject to service of process. *Second,* it is urged that the plaintiff is without capacity to sue because the law of North Carolina does not vest in him the power to institute actions in courts of other States for the collection of assessments against stockholders of a banking corporation or against such as are not residents of North Carolina. *Third,* it is contended that the plaintiff was not authorized by law to levy the assessment inasmuch as he undertook to do so while attempting a reorganization of the trust company or a merger thereof with some other bank and not in liquidation proceedings. *Fourth,* the defendants repudiate plaintiff's claim on the ground that he is not the real party in interest and that the claim, if any, is not an asset of the trust company, and that the plaintiff by law is empowered only to proceed in North Carolina against those amenable to its laws. Finally, it is maintained that plaintiff cannot succeed because there is a defect of parties plaintiff in that the depositors and creditors of the trust company are entitled to the claim or cause of action. From all this it is obvious that the crux of the problem is the extent of the authority of the Commissioner of Banks and the force and effect of his acts under the statutes of North Carolina, particularly as regards a levy of assessment.

Accepting, as authorized by the stipulation between the parties, the testimony of the member of the legal profession of North Carolina as *ex cathedra* regarding the conclusiveness of the determination of the Commissioner of Banks as to the necessity of the assessment, it is readily understandable that, according to the laws of that Commonwealth, an assessment levied and filed has the force and effect of a judgment. Whether an act of this character even though it possesses the solemnity of a judgment in the jurisdiction of its creation is entitled to full faith and credit in this State as against a non-resident stockholder who has had no notice of the assessment

and who has never subjected himself to the jurisdiction, is the question the answer to which will determine plaintiff's right to prosecute.

That answer must be in the negative. Despite the fact that the courts of North Carolina have held (*Corporation Commission* v. *Murphey*, 197 N. C. 42; 147 S. E. 667) that subdivision 13 of section 218(c) is constitutional and enforcible against a resident of that State, nowhere in the authorities of that State, this State, or the Supreme Court of the United States is basis discoverable for the principle that an *ex parte* assessment of a ministerial officer can have the effect of a judgment against a non-resident. It is worth remembering that this action is not brought to enforce the contractual obligation of the defendants as stockholders of the alleged insolvent bank, but finds its reason in the proposition that the assessment is a personal judgment against them. Examining the sections of the Consolidated Statutes herein involved in the light of precedent, we find in *Pennoyer* v. *Neff* (95 U. S. 714, 722; 24 L. Ed. 565) a pronouncement intriguingly applicable to the force and effect of section 218(c) and aptly establishing that a judgment of one State cannot have binding force as a personal judgment against a resident of another State unless there has been personal service of legal process within the territorial jurisdiction of the court rendering the judgment, a voluntary appearance, or unless the judgment can be upheld upon some theory of consent on the part of the individual affected, and further proving that the laws of one State cannot have of their own force any extraterritorial effect so that the courts of a sister State must give them effect beyond the boundary of the enacting State.

In expressing our opinion in this respect, we can find no better medium than the language of the *Pennoyer* case, which was appealed to approvingly in *Hess* v. *Pawloski* (274 U. S. 352; 47 S. Ct. 632; 71 L. Ed. 1091). "The several States are of equal dignity and authority, and the independence of one implies the exclusion of power from all others. And so it is laid down by jurists, as an elementary principle, that the laws of one State have no operation outside of its territory, except so far as is allowed by comity; and that no tribunal established by it can extend its process beyond that territory so as to subject either persons or property to its decisions. 'Any exertion of authority of this sort beyond this limit,' says Story, 'is a mere nullity, and incapable of binding such persons or property in any other tribunals.' Story, Confl. Laws, sect. 539."

Turning to the courts of our own State, we find that they consistently have refused to give effect to statutory provisions of another State intended to provide the remedy to be used against a

non-resident stockholder for the purpose of collecting his contractual liability. (*Marshall* v. *Sherman*, 148 N. Y. 9; *Shipman* v. *Treadwell*, 200 id. 472.) In the case at bar plaintiff looks not to the contractual obligation of the defendant, but seemingly relies upon the statutory remedy provided by the laws of North Carolina, which seeks to collect under the guise of a personal judgment. This cannot be countenanced. A close inspection of section 218(c), subdivision 13, leads to the conclusion that as regards non-residents, it authorizes an action on the assessment as distinguished from an action on the judgment. This is a distinguishment with a difference, for it requires that in any action against a non-resident facts must be alleged and proved indicating that the assessment is the correct amount of the stockholder's liability. Here such facts are remarkable by their absence. Finally, grave doubt is entertained concerning plaintiff's assumption of control in compliance with law. If the assessment was occasioned in the course of any proceeding other than that of liquidation or before a complete liquidation was had, then the Commissioner of Banks failed to place himself in a position protected by section 218(c).

As a last word and as an epitome of what has been written, it would seem that plaintiff may not prosecute these defendants as judgment debtors, but must establish to the satisfaction of the courts of this State the right to enforce the contractual responsibility assumed by them and as it is defined by section 219(a). Verdict for defendants.